UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
RONNIE D. WILSON,                               :   CASE NO. 3:07-CV-2968
                                                :
       Petitioner,                              :
                                                :
vs.                                             :   OPINION & ORDER
                                                :   [Resolving Docs. No. 2, 14, 15.]
PAT HURLEY,                                     :
                                                :
       Respondent.                              :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On September 28, 2007, Petitioner Ronnie D. Wilson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 2.] With his petition, Wilson seeks relief from the judgment and sentence that an Ohio state court imposed following his conviction on nine counts of rape and eleven counts of sexual battery. [*Id.* at 16.] Respondent warden Pat Hurley opposes the petition. [Doc. 12.]

On September 18, 2008, Magistrate Judge Greg White filed a Report and Recommendation that recommended the Court dismiss the Petitioner's writ. [Doc. 14.] The Petitioner objects to the Magistrate Judge's Report and Recommendation. [Doc. 15.] For the reasons provided below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Petitioner Wilson's request for habeas relief.

**I. Background**

Petitioner Wilson was convicted before the Court of Common Pleas, Putnam County, of nine

-1-

Case No. 3:07-CV-2968
Gwin, J.

counts of rape in violation of R.C. § 2907.02(A)(1)(b) and of eleven counts of sexual battery in violation of R.C. § 2907.03(A)(5). [Doc. 12, Att. 2, Ex. 3 at 11-14.] In the underlying state criminal case, the Petitioner's daughter accused him of having improper sexual contact with her. In November 2004, while they were driving together to Lima, Ohio, the Petitioner's daughter, CW, "first reported to her mother, Barbara Wilson, that her father had touched her in a sexual manner, and that he had 'done [things] a father should not do to a child.'" *State v. Wilson*, No.12-05-20, 2006 WL 1062103, ¶ 2 (Ohio Ct. App. Apr. 24, 2006). Upon hearing this information, "Barbara immediately turned the car around and returned home to confront Wilson; she sent CW and her siblings to an aunt's house." *Id.* Wilson initially denied his daughter's allegations, but he eventually confessed after Barbara asked CW to return home to confront her father. *Id.* ¶ 3.

At first, Barbara did not report this incident, apparently at CW's request, and began attending counseling sessions with Wilson in the hopes of keeping the family together. Barbara and Wilson separated, however, after CW told Barbara about the true extent of Wilson's actions. *Id.* ¶ 4. In May 2005, CW told her mother that "Wilson's inappropriate touching had begun in 2000 when she was eleven years old, that it progressed to . . . her perform[ing] oral sex on him about once a week, that it evolved into him performing oral sex on her, and eventually to anal sex." *Id.* ¶ 5. Wilson only stopped this activity when CW told him that it could not continue. *Id.*

Following this disclosure, Barbara contacted the police. *Id.* ¶ 6. After an investigation, the Putnam County Grand Jury indicted Wilson on the abovementioned counts on June 3, 2005. [Doc. 12, Att. 2, Ex. 1 at 1-8.] On August 29, 2005, the Petitioner was found guilty on all counts. [Doc. 12, Att. 2, Ex. 3 at 11-14.] The trial court sentenced Wilson to a term of ten years of incarceration on Count I, ten years of incarceration on Counts II-V, ten years of incarceration on Counts VI-IX,

Case No. 3:07-CV-2968
Gwin, J.

and five years of incarceration on Counts X-XX. [Doc. 12, Att. 2, Ex. 4 at 17-19.] In total, the trial court ordered Petitioner to serve thirty years in prison. The sentences imposed on the rape counts were run consecutively while the sentences on the sexual battery counts were to be served concurrently. [*Id.*]

On October 26, 2005, the Petitioner, through new counsel, filed a Notice of Appeal with the state appellate court. [Doc. 12, Att. 2, Ex. 5.] In his brief on direct appeal, Wilson raised two assignments of error: (1) the trial court committed an error of law in determining competency pursuant to R.C. § 2945.42; and (2) the appellant was denied effective assistance of counsel. [Doc. 12, Att. 2, Ex. 6 at 28.] On April 24, 2006, the state appellate court affirmed Wilson's convictions. [Doc. 12, Att. 3, Ex. 8.]

On June 8, 2006, Wilson, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio and raised the following claim:

> R.C. § 2945.42 does not create an exception for the admission of privileged spousal communications, made in furtherance of preserving the marriage and family, in a prosecution for rape and sexual battery against the parties' child.

[Doc. 12, Att. 3, Ex. 10 at 67.] The Supreme Court of Ohio denied Wilson leave to appeal on October 4, 2006. [Doc. 12, Att. 3, Ex. 11.]

On June 16, 2007, Wilson, through new appellate counsel, filed an application to re-open his direct appeal under Ohio App. R. 26(B) with the state appellate court. [Doc. 12, Att. 4, Ex. 12.] With this application, the Petitioner raised the following assignments of error:

> 1. Ronnie Wilson was denied his Constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution when a) the first nine counts of the indictment were defective because it did not include an element or specification required by the statute and b) trial counsel was ineffective in failing to file a pre-trial motion to dismiss.

Case No. 3:07-CV-2968
Gwin, J.

> 2. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the trial court's instruction to the jury regarding the first nine counts failed to require the jury to consider and make an independent finding of a material element and fact regarding the age of the complainant and b) trial counsel was ineffective in failing to object to this instruction, when the age of the complainant was a major issue at trial.
>
> 3. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the verdict forms in the first nine counts, reflecting the findings of the jury, do not state the separate and independent determination of age of the complainant that is statutorily required, when this is a major issue at trial and b) trial counsel was ineffective in failing to object to the defective verdict forms.
>
> 4. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution when a) the sentencing judge enhances his sentence, contra the *Blakely v. Washington* rule, using un-indicted conduct as a basis to improperly render an excessive sentence and b) trial counsel was ineffective in failing to object at the sentencing hearing.
>
> 5. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) a series of photographs are introduced by the prosecution with typed commentary stating opinions on the alleged conduct; that, in certain situations, the investigation was ongoing, all of which was hearsay, created a profile and gave the jury the impression that guilt was preordained and b) trial counsel was ineffective under the *Strickland* doctrine in failing to move to redact the commentaries.
>
> 6. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) his wife, acting as a Government agent, and not as a private person, secretly records a tape with Ronnie Wilson, and this tape is introduced in the case-in-chief, and significantly relied upon by the prosecution and b) defense counsel was ineffective under the *Strickland* doctrine in failing to object under the proper issue.
>
> 7. Ronnie Wilson was denied his Constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the evidence at trial shows the indictment was constructively amended and b) trial counsel was ineffective under the *Strickland* doctrine in failing to object.

[*Id.*] The state appellate court denied the Petitioner's application because it was untimely on August 2, 2007. [Doc. 12, Att. 4, Ex. 13.]

-4-

Case No. 3:07-CV-2968
Gwin, J.

On August 20, 2007, Wilson, through counsel, filed a notice of appeal with the Supreme Court of Ohio. [Doc. 12, Att. 4, Ex. 14.] In his brief, the Petitioner raised the same seven assignments of error set out above and added the following additional claim:

> 8. When the appellate attorney (1) fails to notify the client of the ninety day rule in the re-opening of an appeal and (2) there is a threshold showing of constitutional errors not presented, the court of appeals errs in denying the application, contra the Fifth, Sixth and Fourteenth Amendments to the Constitution.

[Doc. 12, Att. 4, Ex. 15 at 99.] On October 31, 2007, the Supreme Court of Ohio dismissed Wilson's appeal because it did not involve any substantial constitutional questions. [Doc. 12, Att. 4, Ex. 16.]

On September 28, 2007, Wilson filed a petition for a writ of habeas corpus asserting the following grounds for relief:

> GROUND ONE: Ronnie Wilson was denied his Constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the first nine counts of the indictment were defective because it did not include an element or specification required by the statute and b) trial counsel was ineffective in failing to file a pre-trial motion to dismiss.
>
> GROUND TWO: Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the trial court's instruction to the jury regarding the first nine counts failed to require the jury to consider and make an independent finding of a material element and fact regarding the age of the complainant and b) trial counsel was ineffective in filing to object to this instruction, when the age of the complainant was a major issue at trial.
>
> GROUND THREE: Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the verdict forms in the first nine counts, reflecting the findings of the jury, do not State the separate and independent determination of age of the complainant that is statutorily required, when this is a major issue at trial and b) trial counsel was ineffective in failing to object to the defective verdict forms.
>
> GROUND FOUR: Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution

Case No. 3:07-CV-2968
Gwin, J.

when a) the sentencing judge enhances his sentence, contra the *Blakely v. Washington* rule, using un-indicted conduct as a basis to improperly render an excessive sentence and b) trial counsel was ineffective in failing to object at the sentencing hearing.

GROUND FIVE: Ronnie Wilson was denied his constitutional rights under the fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) a series of photographs are introduced by the prosecution with typed commentary stating opinions on the alleged conduct; that, in certain situations, the investigation was ongoing, all of which was hearsay, created a profile and gave the jury the impression that guilt was preordained and b) trial counsel was ineffective under the *Strickland* doctrine in failing to move to redact the commentaries.

GROUND SIX: Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) his wife, acting as a Government agent, and not as a private person, secretly records a tape with Ronnie Wilson, and this tape is introduced in the case-in-chief, and significantly relied upon by the prosecution and b) defense counsel was ineffective under the *Strickland* doctrine in failing to object under the proper issue.

GROUND SEVEN: Ronnie Wilson was denied his Constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the evidence at trial shows the indictment was constructively amended and b) trial counsel was ineffective under the *Strickland* doctrine in failing to object.

GROUND EIGHT: Petitioner Wilson was denied effective assistance of appellate counsel as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

GROUND NINE: When the appellate attorney (1) fails to notify the client of the ninety day rule in the re-opening of an appeal and (2) there is a threshold showing of constitutional errors not presented, the Court of Appeals errs in denying the application, contra the Fifth, Sixth and Fourteenth Amendments to the Constitution.

GROUND TEN: Ohio Revised Code § 2945.42 does not create an exception for the admission of privileged spousal communications, made in furtherance of preserving the marriage and family, in a prosecution for the rape and sexual battery against the parties' child.

GROUND ELEVEN: Petitioner Wilson was denied the effective assistance of counsel.

After Respondent Pat Hurley filed a Return of Writ on February 28, 2008, [Doc. 12.],

Case No. 3:07-CV-2968
Gwin, J.

Magistrate Judge White filed a Report and Recommendation that recommended the Court deny Wilson's petition. [Doc. 14.] The Petitioner objects to the Magistrate Judge's Report and Recommendation. [Doc. 15.] The Court considers each of the Petitioner's objections below.

## II. Legal Standard

*A. Federal Magistrates Act*

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which an objection has been made. *See* 28 U.S.C. § 636(b)(1). As noted in Magistrate White's Report and Recommendation, any objections must be filed with the Clerk of Court within ten days of the report's issuance. Parties waive their right to appeal the Magistrate Judge's Recommendation if they fail to object within the time allotted. *See id.*

*B. The Antiterrorism and Effective Death Penalty Act*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs collateral attacks on state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis,* 269 F.3d 609, 614 (6th Cir. 2001).

Case No. 3:07-CV-2968
Gwin, J.

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor,* 529 U.S. 362 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller,* 269 F.3d at 614 (quoting *Williams,* 529 U.S. at 412) (internal quotations omitted). A federal habeas court may grant the writ "under the 'unreasonable application' clause . . . if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413 (citations omitted). The Sixth Circuit holds that, even if a federal court determines that a state court incorrectly applied federal law, the federal court still cannot grant habeas relief unless it also finds that the state court ruling was unreasonable. *Simpson v. Jones,* 238 F.3d 399, 405 (6th Cir. 2000).

*C. Exhaustion Standard*

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. See 28 U.S.C. § 2254(b)-(c); *Rose v. Lundy,* 455 U.S. 509 (1982). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir. 1990). If relief is no longer available in state court, however, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994).

Case No. 3:07-CV-2968
Gwin, J.

*D. Procedural Default Standard*

A claim may become procedurally defaulted in two ways. First, a petitioner may fail to comply with a state procedural rule in presenting his claim to the appropriate state court. *See Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006). In deciding whether a petitioner's federal claim is procedurally defaulted because of his noncompliance with a state procedural rule, the Sixth Circuit examines four factors: (1) whether there is a state procedural rule that applies to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state courts actually enforced the procedural rule at issue; (3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the petitioner did not comply with a state procedural rule that constituted an adequate and independent state ground, whether the petitioner has demonstrated that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *See Buell v. Mitchell*, 274 F.3d 347, 348 (6th Cir. 2001); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a petitioner may cause his claim to be procedurally defaulted by failing to raise it in state court and to pursue it through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *See Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This notion differs from exhaustion, as AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Thus, when state court

Case No. 3:07-CV-2968
Gwin, J.

remedies are no longer available to a petitioner because he fails to use them within the required time period, procedural default – not exhaustion – bars federal court review. *See id.* In Ohio, a petitioner cannot raise a claim in post-conviction proceedings when this claim could have been litigated before judgment or on direct appeal. *See id.* As a result, if an Ohio petitioner fails to adequately raise a claim on direct appeal, the claim is procedurally defaulted. *See id.*

To adequately raise a claim on direct appeal, a petitioner must "fairly present" the claim to the state court. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). In doing so, a "petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can demonstrate that his claim has been fairly presented to the state court as a federal constitutional claim by: (1) relying upon federal cases employing constitutional analysis; (2) relying upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A habeas court will consider the merits of a federal claim that was procedurally defaulted in the state court only if "the petitioner can show cause to excuse his failure to present the claim[] appropriately in state court[] and actual prejudice as a result." *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Teague v. Lane*, 489 U.S. 288, 298-99 (1989). To demonstrate cause, the petitioner must establish "that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin*, 434 F.3d at 417 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To demonstrate prejudice, the petitioner must show "that the errors at trial 'worked to [petitioner's] *actual* and

-10-

Case No. 3:07-CV-2968
Gwin, J.

substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (citing *United States v. Frady,* 456 U.S. 152, 170 (1982)). Under this standard, prejudice does not occur unless the petitioner demonstrates that there is "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell,* 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene,* 527 U.S. 263, 289 (1999)).

Finally, "[i]n cases involving probable innocence, courts address the merits of the defaulted claim to avoid a fundamental miscarriage of justice." *Stanford*, 266 F.3d at 452; *see also Schlup v. Delo,* 513 U.S. 298, 317-23 (1995). In claiming that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense," *Jones v. Bradshaw,* 489 F. Supp. 2d 786, 806 (N.D. Ohio 2007) (citing *Dretke v. Haley,* 541 U.S. 386, 392 (2004)), a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324. "[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare" and, as a result, "claims of actual innocence are rarely successful." *Id.* at 324.

### III. Analysis

*A. Procedurally Defaulted Grounds for Relief*

Petitioner Wilson argues that his first nine grounds for relief, as well as his eleventh ground for relief, are not procedurally defaulted and thus can properly be considered by the Court. The Petitioner did not raise his first nine claims on direct appeal. Instead, he raised them for the first time

-11-

Case No. 3:07-CV-2968
Gwin, J.

in his Rule 26(B) application to re-open his direct appeal. The state appellate court denied the application to re-open because it was untimely and because the Petitioner did not establish good cause for his delay. [Doc. 12, Att. 4, Ex. 13.] Further, although Wilson presented his eleventh ground for relief – an ineffective assistance of counsel claim – to the state appellate court on direct appeal, he did not raise this ground for relief on direct appeal to the Supreme Court of Ohio. [Doc. 12, Att. 3, Ex. 10 at 67.] As a result, these grounds are procedurally defaulted. Because the Petitioner does not demonstrate cause or prejudice for the procedural default of these grounds for relief and does not present a viable "actual innocence" claim, the Court agrees with Magistrate Judge White and denies Wilson's first nine grounds for relief, as well as his eleventh ground for relief, due to procedural default.

The Court first considers the Petitioner's argument that the Respondent waived defenses based upon procedural default because he did not assert it in the state courts. "[P]rocedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'" *Trest v. Cain*, 522 U.S. 87, 89 (1997) (citing *Gray v. Netherland*, 518 U.S. 152, 166 (1996)). Both Supreme Court and Sixth Circuit case law indicates, however, that the State is required to raise the defense of procedural default in federal – not state – proceedings. *See Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006) ("[T]he warden's objection in her brief to this court [the Sixth Circuit] was insufficient because she has not identified with specificity which statements are allegedly defaulted."); *Flood v. Phillips*, 90 Fed. Appx. 108, 114 (6th Cir. 2004) (holding that the Supreme Court has not yet decided whether district courts are entitled to dismiss claims *sua sponte* for procedural default and finding that the State had waived the defense of

Case No. 3:07-CV-2968
Gwin, J.

procedural default only because it did not raise this defense "in either state or federal court and it failed to object to the magistrate's Report and Recommendation"). In this case, Respondent Hurley properly raised the defense of procedural default as to Petitioner Wilson's first nine claims and his eleventh claim for relief in the Respondent's opposition to the Petitioner's habeas corpus petition. [Doc. 12.] As a result, the Respondent has not waived the defense of procedural default.

Further, under the *Maupin* test, as articulated in *Buell v. Mitchell*, the Petitioner has procedurally defaulted his first nine claims and his eleventh claim for relief. To determine whether a petitioner's federal claim is procedurally defaulted because of his non-compliance with a state procedural rule, the Court takes into account four factors: (1) whether there is a state procedural rule that applies to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state courts actually enforced the procedural rule at issue; (3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the petitioner did not comply with a state procedural rule that constituted an adequate and independent state ground, whether the petitioner has demonstrated that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *See Buell*, 274 F.3d at 348; *see also Maupin*, 785 F.2d at 138.

In this case, Wilson did not raise his first nine grounds for relief on direct appeal. Instead, he articulated them in an application to re-open direct appeal. Under Ohio App. R. 26(B)(1), such an application must be filed within ninety days of the state appellate court's decision. The state appellate court, however, may excuse the failure to file within the allotted time upon a showing of "good

Case No. 3:07-CV-2968
Gwin, J.

cause." Ohio App. R. 26(B)(2)(b). It is undisputed that Wilson did not file his application to re-open within the required ninety day period. Applying the first part of the *Maupin* test, it is clear that Wilson failed to comply with an applicable state procedural rule, namely Rule 26(B). The second part of the *Maupin* test was satisfied when the state appellate court enforced this procedural rule by denying Wilson's application as untimely and finding no good cause for his delay. [Doc. 12, Att. 4, Ex. 13.]

With respect to the third part of the *Maupin* test, the Sixth Circuit has repeatedly held that "the timeliness requirements in Ohio App. R. 26(B) . . . are . . . actually enforced, adequate and independent state ground[s] upon which the Ohio courts consistently refuse to address [habeas] . . . claims." *Fautenberry v. Mitchell*, 515 F.3d 614, 640 (6th Cir. 2008); *see also Coleman v. Mitchell,* 244 F.3d 533, 539-40 (6th Cir. 2001) (finding that the petitioner procedurally defaulted his claim because he failed to comply with the requirements of Rule 26(B)). The Sixth Circuit's decision in *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006), in which the court indicated that Rule 26(B) is not "firmly established and regularly followed" and that "[a] review of the relevant case law reveals that the Ohio Supreme Court has been erratic in its handling of untimely applications in capital cases," *id.* at 420, is distinguishable because (1) Rule 26(B) had not been enacted when the petitioner in *Franklin* filed his motion to re-open[1] and the Rule was not retroactive; and (2) even if Rule 26(B) was retroactive, it had not become firmly established and regularly followed by the time the petitioner in *Franklin* filed his motion. *See id.* at 420-21. Petitioner Wilson filed his application to re-open his direct appeal long after the law regarding the timing of the filing of such applications became settled. Furthermore, unlike the case at hand, *Franklin* was a capital case.

---

[1] Amended Ohio App. R. 26(B) was enacted in July 1993. *See Fautenberry*, 515 F.3d at 641.

Case No. 3:07-CV-2968
Gwin, J.

The Court can excuse the procedural default of Petitioner Wilson's first nine claims only if he demonstrates "cause" and "prejudice" for the default. Wilson argues that his default should be excused because counsel failed to inform him of the deadline to file an application to re-open his appeal. [Doc. 2 at 36.] This argument fails, however, because it is well established under Ohio law that Rule 26(B) proceedings are discretionary in nature and, as a result, no right to counsel attaches to them. *See* Scuba v. Brigano, 527 F.3d 479, 486 (6th Cir. 2007) ("Scuba's counsel could not have been 'ineffective' for failing to file an application [to re-open direct appeal] on his behalf. Ohio Appellate Rule 26(B) filings are collateral proceedings to which a defendant has no Sixth Amendment right to the assistance of counsel."); Morgan v. Eads, 818 N.E.2d 1157, 1161 (Ohio 2004) ("Ohio had no constitutional obligation to create App. R. 26(B) at all, and it has no constitutional obligation now to provide counsel to those defendants who file applications under that rule."). Because Wilson cannot demonstrate cause for delaying to file the application to re-open his direct appeal by showing that an "'objective factor external to the defense impeded [his] efforts to comply' with [Rule 26(B)]," *Franklin*, 434 F.3d at 417 (quoting *Murray*, 477 U.S. at 488), and because he has not presented a claim of actual innocence, his first nine grounds for habeas relief are procedurally defaulted. Thus, the Court denies Wilson's writ with respect to his first nine grounds for relief.

Petitioner Wilson's eleventh ground for relief – his ineffective assistance of counsel claim – is also procedurally defaulted. Although Wilson raised this claim before the state appellate court on direct appeal, he did not present it on direct appeal to the Supreme Court of Ohio. [Doc. 12, Att. 3, Ex. 10 at 67.] As the Supreme Court of Ohio has held, the doctrine of *res judicata* bars a defendant from raising any constitutional claims in a post-conviction appeal under R.C. § 2953.21 that were or could have been raised by the defendant at trial or on direct appeal. *See State v. Perry*, 226 N.E.2d

Case No. 3:07-CV-2968
Gwin, J.

104, 108 (Ohio 1967); *see also State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982) (applying *Perry* in the context of a petitioner's ineffective assistance of counsel claim and holding that it was barred by *res judicata*). Because Wilson's eleventh claim for relief could have been (but was not) raised on direct appeal to the Supreme Court of Ohio, it is procedurally defaulted. The Petitioner has neither demonstrated cause and prejudice regarding his failure to present this claim to the Supreme Court of Ohio nor has he put forth an "actual innocence" claim. As a result, the Court denies Wilson's petition for habeas relief with respect to his eleventh ground for relief.

### B. *Remaining Ground for Relief*

In his remaining claim – the tenth ground for relief – Petitioner Wilson argues that the state courts erred by admitting into evidence privileged spousal communications, thereby violating Ohio law. [Doc. 2 at 37-38.] The Court denies Wilson's request for habeas relief with respect to this claim because Wilson fails to demonstrate that this is the proper remedy for his alleged injury.

Courts have uniformly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Lott v. Coyle*, 261 F.3d 594, 607 n. 6 (6th Cir. 2001). Thus, the determination of whether certain evidence is admissible at trial is within the purview of the state – not the federal – courts. *See Johnson v. Karnes*, 198 F.3d 589, 593 n. 3 (6th Cir. 1999). Only when the admission of evidence results "in a denial of fundamental fairness or due process" may there be grounds for habeas relief. *Clemmons v. Sowders*, 34 F.3d 352, 358 (6th Cir. 1994)

In this case, the Petitioner never characterized his tenth ground for relief as a federal constitutional claim in the state courts. Instead, he consistently presented it as an error of state law.

Case No. 3:07-CV-2968
Gwin, J.

Wilson also fails to present any argument regarding how this alleged violation of state evidentiary law has rendered his trial fundamentally unfair, particularly in light of the fact that "fundamental fairness does not require a perfect trial." *Id.* (citing *Wright v. Dallman*, 999 F.2d 174, 178-79 (6th Cir. 1993)). As a result, the Court denies Wilson's petition for habeas relief with respect to his tenth ground for relief.

### IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Petitioner Wilson's § 2254 petition. Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could be taken in good faith, and the Court hereby issues a certificate of appealability pursuant to 28 U.S.C. 2253(c); Fed. R. App. P. 22(b) as to the following issues: (i) whether the Petitioner's first nine claims and eleventh claim for relief are procedurally defaulted; and (ii) whether cause and prejudice has been shown with respect to the procedural default.

IT IS SO ORDERED.

Dated: October 6, 2008        s/    *James S. Gwin*
                              JAMES S. GWIN
                              UNITED STATES DISTRICT JUDGE